IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JERRY BENNETT HATFIELD, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:11-CV-590-WKW |
| ) | [WO] |
| JOHN MCDANIEL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This case involves the allegedly illegal search and seizure of Plaintiff Jerry Bennett Hatfield's store and computer. The matter comes before the court on the Motion for Partial Summary Judgment filed by Defendants John McDaniel, Gary Graves, Robert Furlong, and the City of Prattville, Alabama. (Doc. # 25.) The parties have argued their positions extensively: Mr. Hatfield filed a Response (Doc. # 29), to which Defendants responded (Doc. # 35), to which Mr. Hatfield filed a sur-reply, to which Defendants responded (Doc. # 45). For the reasons discussed below, summary judgment is due only on Mr. Hatfield's Fourteenth Amendment and negligence claims. As to Mr. Hatfield's Fourth Amendment claims, summary judgment is improper.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction over this action is exercised pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The parties do not contest personal jurisdiction or venue, and there are allegations sufficient to support both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jerry Bennet Hatfield, III, runs a car stereo store in Prattville called Powerhouse Audio. Sometimes Mr. Hatfield accepts trade-ins, which are not always the fruit of honest labor. For instance, when a couple walked into Powerhouse Audio toting a varmint rifle and looking for stereo equipment, Mr. Hatfield seized the opportunity and made a deal: The couple got a stereo, and Mr. Hatfield, a rifle. Hindsight will show the couple got the better of that deal.

But Mr. Hatfield was not one to accept items indiscriminately. On July 21, 2009, shortly after Mr. Hatfield traded for the rifle, a man came into Powerhouse Audio trying to sell a car stereo. Mr. Hatfield prudently declined the offer, and before the man even left the store a Prattville police officer showed up. With the help of Defendant Mike Heath, a deputy of the Autauga County Sheriff, the officer determined the stereo was stolen, and the man attempting to sell it was placed under arrest.

As the investigation was winding down, Mr. Hatfield pulled out his new rifle and asked Deputy Heath if it, too, might be stolen goods. (Summ J. Resp. 3–4 (Doc. # 25).) As it happened, the rifle had been stolen five months earlier, along with the all-terrain vehicle it had been sitting in.

At some point, Defendant John McDaniel, a Lieutenant with the Prattville Police Department, arrived on the scene to investigate. Given the circumstances, Lieutenant McDaniel thought it best to check Mr. Hatfield's inventory for other stolen merchandise. Mr. Hatfield signed a consent form allowing the police to search his business

Under Lieutenant McDaniel's direction, the police began to check serial numbers on Mr. Hatfield's inventory to determine how much of it had been reported stolen. All was going well until Defendants Ty Jones and Jim Steele arrived with Hobbs, a labrador retriever. Hobbs is not a party to this action.

Deputy Steele and Hobbs began to search the store for narcotics. Mr. Hatfield, however, thought it inappropriate to have a dog in his store with customers around and "adamantly objected" to Hobbs's presence. (Summ. J. Resp. 4.) Lieutenant McDaniel met those objections with an ultimatum, giving Mr. Hatfield the option of doing things the easy way (in which Mr. Hatfield would calm down and the search would continue) or the hard way (in which Mr. Hatfield would be arrested, the police

would get a warrant, and the search would continue).  Mr. Hatfield chose the hard way.

While Mr. Hatfield was on his way to jail for possession of a stolen firearm, Lieutenant McDaniel was busy obtaining a warrant.  A little over two hours after Mr. Hatfield's arrest, a municipal judge signed a warrant authorizing the police to search Powerhouse Audio for, among other things, "photographs depicting [juveniles illegally engaging in sexual acts]." (Summ. J. Resp. 6.)  Though the parties disagree about what happened during the interim, Mr. Hatfield claims that the police stayed in the store and continued the search behind locked doors (but open windows).  It is undisputed, however, that the search continued after the warrant was obtained, and that the officers seized items including cameras, bills of sale, guns, and drug paraphernalia.  The police also seized Mr. Hatfield's computer.  At some point during the warrant search, Mr. Hatfield's girlfriend, Kandi Neal, told Lieutenant McDaniel there was child pornography on the computer.  (Summ. J. Br. 7.)

A little over a week after the search of Powerhouse Audio, Sergeant Gary Graves of the Prattville Police started to investigate Ms. Neal's allegation.  On July 29, 2009, a municipal judge issued a second warrant, this one authorizing the search of Mr. Hatfield's computer and commanding Sergeant Graves to "[s]eize, tabulate and make return according to law the following property and things as set forth in this

search warrant and make due return of this warrant and an inventory of all property seized thereunder . . . within 10 days as required by law." (Summ. J. Br. Ex. 17.) Sergeant Graves, however, had more pressing matters to attend to: At that time "the Police department was overwhelmed with a project of installing mobile data computers into each police automobile pursuant to a communications grant." (Summ. J. Reply 11.) It was Sergeant Graves's job to ensure the systems were installed correctly. As a result, he "was required to make his computer forensics work a second priority." (Summ. J. Reply. 11.) It is undisputed that Sergeant Graves did not perform the search of Mr. Hatfield's computer within ten days. (Summ. J. Reply. 11.)

On June 21, 2010, nearly a year after Mr. Hatfield's computer was seized, Sergeant Graves performed a forensic examination on the computer. (*See* Summ. J. Resp. 8; Summ. J. Br., Exs. 18 at 1, 9 at 3.) The search revealed hundreds of sexually explicit pictures, including some with subjects that Sergeant Graves believed to be under the age of seventeen.[1]

On July 1, 2010, Mr. Hatfield was arrested and charged with twenty counts of possession of child pornography in violation of state law. At a preliminary hearing on September 8, a municipal judge determined the charges were supported by

---

[1] Defendants have moved to publish the photographs to the court (Doc. # 26), apparently to resolve any question regarding the age of their subjects. At this stage, however, it is irrelevant whether there was, in fact, any child pornography on Mr. Hatfield's computer.

probable cause. The circuit court, however, found the search of Powerhouse Audio was not supported by probable cause and granted Mr. Hatfield's motion to suppress all evidence seized during that search (including the computer). In light of that ruling, the district attorney decided there was no longer sufficient evidence to support a criminal charge against Mr. Hatfield and agreed to dismiss the charges. On July 19, 2011, the case was *nol prossed* on motion of the district attorney, and Mr. Hatfield was a free man.

Two days later, Mr. Hatfield filed a Notice of Claim against the City of Prattville for violation of his constitutional rights. That same day he filed suit in this court against the Prattville police officers who searched his business (Defendants John McDaniel, Gary Graves, and Robert Furlong), the Autauga County Deputies who participated in the search (Defendants Mike Heath, Ty Jones, and Jim Steele), and the City of Prattville. On May 15, 2012, the Autauga County defendants were dismissed pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. The remaining Defendants have now moved for summary judgment on Mr. Hatfield's § 1983 claims against Lieutenant McDaniel, Officer Furlong, and Sergeant Graves for violations of the Fourth and Fourteenth Amendments (Counts I and II), and Mr. Hatfield's negligence claim against all the defendants (Count III). The state-law

malicious prosecution claim against the City of Prattville (Count IV) is not at issue here.

### III. STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the nonmovant has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. "[T]he court must view all evidence and make all reasonable inferences in favor of the [nonmovant]." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Rule 56(e)(2). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

## IV. DISCUSSION

This opinion will clear its plate of the simple issues first before moving on to the main course.

Defendants argue, and Mr. Hatfield agrees, that his Fourteenth Amendment claims are due to fail under the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266, 271–72 (1994). (Mr. Hatfield is nothing if not agreeable.)

Similarly, Mr. Hatfield's claims for negligent violations of the Fourth and Fourteenth Amendment can be disposed of summarily. Defendants argue that negligence liability simply does not lie for violations of the Fourth and Fourteenth Amendments, citing as support *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not implicated by a negligent act of an official") and *Kelly v. Curtis*, 21 F.3d 1544 (11th Cir. 1994). Although Mr. Hatfield has not expressly agreed with Defendants' position regarding his negligence claim, he has not defended it on summary judgment and thus abandoned the claim. At any rate, Defendants' arguments are sound, and summary judgment is proper on the negligence

claim. *See Maughon v. Bibb County,* 160 F.3d 658, 660 (11th Cir. 1998) (stating "[n]egligent or innocent mistakes do not violate the Fourth Amendment"); *see also Dodd v. City of Norwich,* 827 F.2d 1, 7–8 (2d Cir. 1987) (noting "[t]he Supreme Court has not yet extended liability under the fourth amendment to include negligence claims").

Mr. Hatfield's opposition to the remainder of Defendants' motion, however, is markedly more vigorous. All that is left now is to start in on the meat of the controversy: Mr. Hatfield's § 1983 claims alleging violations of his Fourth Amendment rights and Defendants' invocation of qualified immunity

### A.    *The Qualified Immunity Standard*

Under the doctrine of qualified immunity, "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the Eleventh Circuit, the "objective reasonableness" standard requires a public official hoping to invoke this qualified immunity to show only that he "was acting within the scope of his discretionary authority." *Stough v. Gallagher*, 967 F.2d 1523, 1525 (11th Cir. 1992). Mr. Hatfield has not argued Defendants were acting

outside the scope of their discretionary authority, so the first prong of the "objective reasonableness" standard is not in dispute.

Once a public official shows he was acting within the scope of his discretionary authority, he is immune from suit unless the plaintiff can "show a lack of good faith on the defendant's part" by demonstrating the defendant's actions "violated clearly established constitutional law." *Id.* (internal quotations omitted). An official's conduct violates clearly established law when (1) "a materially similar case has already been decided, giving notice to the police"; (2) "a broader, clearly established principle should control the novel facts in [a] situation"; or (3) "the conduct . . . so obviously violates [the] constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

As the following discussion will show, Mr. Hatfield's evidence puts this case into the first category, if not the third. For the purpose of summary judgment, there is substantial evidence to show that Lieutenant McDaniel, Officer Furlong, and Sergeant Graves executed searches on Mr. Hatfield's property without a valid warrant and in circumstances not falling within a warrant exception. If the text of the Fourth Amendment itself does not clearly establish the illegality of such actions, the Supreme Court's pronouncement in *Katz v. United States* should be sufficient to put public officials on notice: "[S]earches conducted outside the judicial process, without

prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." 389 U.S. 347, 357 (1967) (footnotes omitted).[2]

### B.     *The Search of Powerhouse Audio*

Mr. Hatfield's encounter with Lieutenant McDaniel and Officer Furlong can be divided into three time periods. First, there was the consent search, during which officers searched for stolen merchandise in Powerhouse Audio pursuant to Mr. Hatfield's written consent. After the drug dog arrived, however, Mr. Hatfield argues that he withdrew consent, and it is undisputed that he was arrested shortly thereafter. About two hours after the arrest, Lieutenant McDaniel obtained a warrant, and the search of Powerhouse Audio continued. On summary judgment, the events occurring in the interim between the consent search and the warrant search are key.

According to Defendants, no search occurred during the interim. Mr. Hatfield, however, has provided evidence in the form of witness deposition testimony that the Prattville Police locked the door to Powerhouse Audio and remained inside while officers awaited a warrant. The same witness claims he watched as an officer in the store "moved a box around sideways and obviously wrote something down off of it

---

[2] Should the trial evidence differ from the facts recited above, the court will revisit the qualified immunity issue.

11

and made a phone call." (Summ. J. Reply 4 (Doc. # 35).) On summary judgment, the court must resolve this dispute by viewing the evidence most favorably to Mr. Hatfield. Resolution of this motion, then, must proceed on the assumption that officers remained in the store and moved at least one object during the interim between the consent search and the warrant search.

The question, then, is whether Mr. Hatfield's evidence that an officer on the scene moved an object in his store during the interim is sufficient to show a warrantless search occurred. The Supreme Court decided a similar question in *Arizona v. Hicks*, and its answer warrants quoting at some length:

> [T]he distinction between looking at a suspicious object in plain view and moving it even a few inches is much more than trivial for purposes of the Fourth Amendment. It matters not that the search uncovered nothing of any great personal value . . . —serial numbers rather than (what might conceivably have been hidden behind or under the equipment) letters or photographs. A search is a search, even if it happens to disclose nothing but the bottom of a turntable.

480 U.S. 321, 325 (1987). The controlling precedent, then, shows that an officer moving a box in Powerhouse Audio, even if only a few inches, and then inspecting it constituted a search (even if that search revealed nothing of great value). Accordingly, on summary judgment, Lieutenant McDaniel and Officer Furlong, who allegedly participated in that warrantless search, are not entitled to invoke the defense

of qualified immunity as a shield to Mr. Hatfield's Fourth Amendment claim against them.

Because material questions of fact involving the interim search preclude summary judgment on the claims against Lieutenant McDaniel and Officer Furlong, it is unnecessary to decide at this stage whether qualified immunity shields their actions during the warrant search of Powerhouse Audio. The court will reserve its ruling on that topic.

### C.     *The Search of the Computer*

In response to Defendants' invocation of qualified immunity to defend Sergeant Graves's conduct, Mr. Hatfield first relies on an Alabama law providing that a search warrant not executed within ten days is void. *See* Ala. Code § 15-5-12.[3] While it is undisputed that Sergeant Graves did not *search* the computer until nearly a year after the warrant was issued, it does not necessarily follow that the warrant was

---

[3] According to that provision, "[a] search warrant must be executed and returned to the judge or the magistrate by whom it was issued within 10 days after its date; if not executed after such time, it is void." An astute reader might note that the wording of this statute actually voids all warrants executed within ten days, *viz.*, those warrants "*not* executed *after* [10 days]." The legislature might consider amending this provision by removing the word *not,* or by changing the word *after* to *before*. Choosing either of those amendments would solve the problem. Until then, the court will reluctantly follow the practice of other courts construing this provision and assume the legislature meant what it meant, not what it said. *Cf. Ex parte Cincinnati Ins. Co.,* 51 So. 3d 298, 303 (Ala. 2010) ("If a literal construction would produce an absurd and unjust result that is clearly inconsistent with the purpose and policy of the statute, such a construction is to be avoided.").

not *executed* within the ten-day limit. Although the term "execute" is undefined in § 15-5-12, usage of the term suggests a search warrant is executed when the described property is physically seized and taken into police custody. In the context of electronically stored information, that would mean the warrant is executed when the computer is seized, not when the files are accessed. *See, e.g., C.B.D. v. State*, 90 So. 3d 227 (Ala. Crim. App. 2011) (noting a warrant to search a computer was executed on the day it was seized); *Riley v. Cornerstone Comm. Outreach, Inc.*, 57 So. 3d 704, 709 (Ala. 2010) (noting that a search warrant related to illegal gambling operations was executed when gambling machines and attached computer servers were seized); *cf.* Fed. R. Crim. P. 41(e)(2)(A)(i) (providing "[t]he time for executing the warrant . . . refers to the seizure or on-site copying of the media or information").

It is undisputed that Mr. Hatfield's computer had already been seized when the warrant authorizing Sergeant Graves's search was issued. If, as appears to be the case, execution of a warrant for electronically stored information only requires physical seizure of the computer, it follows that the warrant authorizing the search of Mr. Hatfield's computer was executed immediately upon its issuance. As a result, Mr. Hatfield cannot demonstrate that Sergeant Graves violated clearly established law when he delayed the forensic examination of the computer beyond the time limit set for execution of the warrant.

Untimeliness, however, is not the only reason Mr. Hatfield claims Sergeant Graves's actions violated clearly established law; he also claims both the warrant authorizing the search and its supporting affidavit were so clearly deficient that any search under the authority of that warrant clearly violated the Fourth Amendment. It is important to note that, while application for a warrant does not render Sergeant Graves's conduct *per se* reasonable, qualified immunity is lost in such a case "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986).

The affidavit Sergeant Graves submitted in support of the warrant to search Mr. Hatfield's computer contains much detail about Sergeant Graves's knowledge, training, and experience. But as to facts tending to establish probable cause to search Mr. Hatfield's computer, the warrant states only the following:

> Affiant further states that he has reason to believe and does believe that to-wit:  Records, documents, e-mail letters, electronic transmissions, user names, pictures in all formats, video clips both scanned in and imported into this laptop located at 101 West Main Street, Prattville, Alabama, Prattville Police Department.
>
> The facts tending to establish the foregoing grounds for the issuance of a search warrant are as follows:  In the month of July 2009 Lt. John McDaniel executed a search warrant at 1706 East Main Street, Prattville, Alabama.

> Further probable cause being that Sgt. Graves received a laptop computer from Lt. John McDaniel which was a Dell laptop. This laptop was seized during the search warrant.
>
> Further probable cause being Lt. McDaniel talked to a person that was at the store and she stated that there were pictures of children on this computer.
>
> Further probable cause being that this laptop was seized under another search warrant and brought to the Computer Forensics Unit for Examination.

(Summ. J. Br. 8.) This language might establish probable cause to believe there were files on a seized computer, some of which were pictures of children. The affidavit does not allege *any* facts, however, that suggest there was probable cause to believe there was evidence of a crime on the computer.

Further, in light of controlling precedent, the affidavit fails to establish even probable cause to believe there would be pictures of children, pornographic or otherwise, on Mr. Hatfield's computer. The only fact supporting such a conclusion is the statement of an unidentified woman at the scene, because the affidavit did not reveal Ms. Neal's identity but only referred to her as "a person that was at the store." (Summ. J. Br. 8.) It is well settled law that a statement from an anonymous source may establish probable cause for a search warrant, but only so long as "given all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that

contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). But here the *only* fact tending to establish probable cause is the anonymous statement, and there is absolutely nothing in the affidavit supporting the veracity or basis of knowledge of the woman who made it. The Supreme Court has held a sworn statement that officers "received reliable information from a credible person" cannot alone support probable cause. *Id.* at 239. The statement here lacks even a conclusory assurance of reliability and credibility, so it could not have provided probable cause for a search warrant.

Nor does the warrant itself provide any hint of probable cause. The warrant merely references the facts contained in the affidavit as its basis for probable cause. As discussed above, those facts are insufficient to support a finding of probable cause, and the warrant is therefore invalid on its face. Because both the warrant and its supporting affidavit are "so lacking in indicia of probable cause as to render official belief in its existence unreasonable," *Malley*, 475 U.S. at 344-45, Sergeant Graves is not entitled to the shield of qualified immunity as a defense to Mr. Hatfield's Fourth Amendment claim.

Defendants argue, however, that Sergeant Graves was entitled to rely upon the collective knowledge of law enforcement to support his conclusion that there was probable cause to search Mr. Hatfield's computer. Specifically, "[w]hile Sgt. Graves

did not identify Ms. Neal by name in his Affidavit, the information that child pornography was on [Mr. Hatfield's] computer was disclosed by Ms. Neal to Lieutenant McDaniel." (Summ. J. Reply 14.) That may be true, but none of that crucial information ever made it into the affidavit. The warrant Sergeant Graves executed was invalid on its face, and no warrant exception applied. Even assuming Sergeant Graves had access to the collective knowledge of law enforcement, Mr. Hatfield's evidence shows his computer was searched pursuant to a facially void warrant. That conduct, if established at trial, constitutes a violation of clearly established law, and Sergeant Graves is therefore not entitled to invoke the defense of qualified immunity.

## V.  CONCLUSION

Accordingly, it is ORDERED that Defendants' motion for partial summary judgment (Doc. # 25) is GRANTED with regard to Plaintiff's claims for negligent deprivation of Fourth and Fourteenth Amendment rights and Plaintiff's § 1983 claims for violation of his Fourteenth Amedment rights. The motion is DENIED with regard to Plaintiff's § 1983 claims for violation of his Fourth Amendment rights.

DONE this 19th day of October, 2012.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE